**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

HOLDING COMPANY OF THE VILLAGES, INC.,

    Plaintiff,

v.

LITTLE JOHN'S MOVERS & STORAGE, INC., a Florida corporation; THE VILLAGES MOVING STORAGE AND LOGISTICS CORP d/b/a THE VILLAGES MOVING AND STORAGE, a Florida corporation; JOHN D. SULLIVAN, an individual,

    Defendants.
_____/

CASE NO.: 5:17-CV-00187-MMH-PRL

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants, Little John's Movers & Storage, Inc. ("Little John's"), The Villages Moving Storage and Logistics Corp ("Villages Moving"), and John D. Sullivan hereby move the Court for an order under Fed. R. Civ. P. 12(b)(6) dismissing the Complaint as to all claims against Little John's and Counts III and V with respect to all Defendants.

### I.   INTRODUCTION

Plaintiff, a holding company, owns the federally registered trademark THE VILLAGES, a mark which is registered only in International Class 37 for "residential and *retirement* home real estate construction and development goods and services." (Doc. 1 at ¶ 40 (emphasis added).) Plaintiff concedes that its mark is "suggestive of a community organized as a group of self-sufficient, interconnected, small towns." (*Id*. at ¶ 45.)[1] Plaintiff contends that the Defendants are "in the business of offering moving and storage services, including to persons or entities wishing

---

[1] The word "descriptive" would be closer to the mark.

to move or re-locate to or within The Villages ® *community.*" (*Id*. at ¶ 50 (emphasis added).) As might be expected given the geographic focus of such businesses one of them is named The Villages Moving Storage and Logistics Corp and is alleged to do business under the fictitious name "The Villages Moving and Storage" (*id.* at ¶¶ 21, 56), and the other one has the name "Little John's Movers & Storage, Inc.," both names being highly descriptive of their respective goods and services and one of them describing the principal geographic focus of its business as that of "the villages," which Plaintiff itself concedes is a "community" where potential customers reside. It is Plaintiff's position that it can foreclose the use of such descriptive terms to solicit customers who live in or are relocating to the community called "the villages" and who may receive their mail at a piece of geography called "the villages." Plaintiff asserts that it can do this simply because Plaintiff owns a trademark for "residential and retirement home real estate" development called THE VILLAGES and a series of newer "The Villages" marks having no connection to the moving and storage of furniture, such as THE VILLAGES TRANSPORTATION. (*Id.* at ¶ 40.) Defendants dispute this contention.[2]

In this motion, Defendants address two aspects of Plaintiff's Complaint: the contention that THE VILLAGES qualifies as a famous mark which is allegedly being diluted by the geographically descriptive term "the villages" and the contention that Little John's is somehow liable on Plaintiff's claims for the use of such geographically descriptive terms because it shares a common owner and is alleged upon information and belief to be "acting in concert with or in a joint venture with" "The Villages Moving." (*Id.* at ¶ 22.) Defendants submit that Plaintiff 's allegations do not plausibly allege a basis for either dilution or holding Little John's liable for the alleged wrongs of the other Defendants.

---

[2] *See Commodores Entertainment Corp. v. McClary,* 2015 WL 12843872 (M.D. Fla. March 10, 2015).

## II.   STANDARD OF REVIEW

When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Moseley v. Carnival Corp.*, 593 Fed. Appx. 890, 892 (11th Cir. 2014). The only way a complaint may survive such a dismissal motion is if the facts alleged, accepted as true, "state a claim to relief that is plausible on its face" such that the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint which has only insinuated a "mere possibility that the defendant may have acted unlawfully is insufficient." *Id.* Moreover, the court may not accept as true "unwarranted deductions of fact" or legal conclusions. *Id.*

## III.   FACTUAL ALLEGATIONS

Plaintiff's predecessor in interest filed for registration of the word mark THE VILLAGE in 2002, claiming a date of first use on July 1, 1992. The mark has since attained incontestable status. (Doc. 1 at ¶ 42.) In 2014 and 2015 Plaintiff obtained a number of other registrations, in the real estate development class of goods and in the class of goods for "transportation of passengers and/or goods by bus and automobile." (*Id.* at ¶ 40.) Plaintiff has used its marks for "residential real estate construction and development, real estate brokerage of residential housing, and resale of residential housing" and other "real estate services-related goods and services" (*Id.* at ¶¶ 28–29.) Plaintiff asserts that it has invested in a significant amount of advertising to promote its goods and services, focusing on, among other things, interesting potential home buyers to "relocate to Florida." (*Id.* at ¶ 31.) Plaintiff also touts its development community and related services on its website www.thevillages.com., where it "offers information, maps, and contact information . . . to residents and prospective residents alike." (*Id.* at ¶ 34.)

3

Defendants, on the other hand, are "in the business of offering moving and storage services, including to persons or entities wishing *to move or relocate to or within* The Villages® community." (*Id*. at ¶ 50 (emphasis added).) They offer, the Complaint alleges, moving services, "senior moving" services, interstate moving services, vehicle transportation services, "packing services, storage and self-storage services, and related goods such as packing and packaging supplies." Defendants maintain offices in Ocala and Oxford, Florida, and share the same telephone number. (*Id*. at ¶¶ 52–53.) The owner of the companies, Defendant Sullivan, is alleged to be the registered owner of www.thevillagesmovingandstorage.com. (*Id*. at ¶ 58.) He is also alleged to be the owner and president of both corporate Defendants and the co-owner of the registered fictitious name "Villages Moving Storage and Logistics." (*Id*. at ¶ 21.)

The Complaint does not allege any instances of actual confusion involved in the activities of Defendants, and it alleges only generally and with no with supporting details that the moving and storage services offered by Defendants are "in competition with Plaintiff's relocation services." (*Id*. at ¶ 74.) Nor does the Complaint identify any trademark registration that purportedly cover moving or storage services related to the communities of which Plaintiff is the developer.

All of the Defendants are alleged to have acted upon information and belief "by and through their principals, officers, agents, and employees" to commit the alleged infringement. (*Id*. at ¶ 23.) Few if any details are provided, however, as to why Little Johns is allegedly involved in the purported infringement as a contributory infringer.

### IV.    LEGAL ARGUMENT

**A.    Count III Does Not Allege a Viable Claim for Dilution.**

Count III proceeds on the theory that the mark THE VILLAGES is a famous mark and that the "defendants" are offering services which are "likely to cause dilution to Plaintiff's famous marks in violation of 15 U.S.C. § 1125(c)." (Doc. 1 at ¶ 128.) The antidilution provisions of the

4

Lanham Act are intended however "to address a *narrow category* of famous registered trademarks where the unauthorized use by others, on *dissimilar products* for which the trademark is not registered, dilutes the distinctiveness of the famous mark" and are "to be applied *selectively* . . . to marks "which are both truly distinctive and famous." 4 McCarthy on Trademarks and Unfair Competition § 42:104, n. 12 (quoting Senate Judiciary Committee Report, S. Rep. No. 100-515, at 7 and 41–42 (Sept. 15, 1988)) (emphasis added)).[3] A famous mark in this context is one "widely recognized by the general consuming public of the United States" as designating a single source of goods or services. 15 U.S.C. § 1125(c)(2).

"The threshold of fame. . . is exceptionally high." *It's a 10, Inc. v. Beauty Elite Group, Inc.,* 110 U.S.P.Q. 2d 1116, 1125 (S.D. Fla. 2013).  A party claiming dilution must show that the mark claimed to be famous is "practically a household name, of the likes of such giants of branding as EXXON, KODAK and COCA-COLA." *Id. See also MPS Entm't LLC v. Abercrombie & Fitch Stores, Inc.,* 2013 WL 3288039 at *16 (S.D. Fla. June 28, 2013) (mark claimed to be famous must be "truly prominent and renowned"); *Brain Pharma, LLC v. Scalini,* 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (dilution claims are limited to "truly famous marks such as Budweiser beer, Camel cigarettes and Barbie dolls"); *NCC Business Servs., Inc v. Lemberg & Assocs., LLC,* 2014 WL 5510892 at * 6 (M.D. Fla. June 6, 2014) (magistrate opinion) (quoting *Scalini, supra*).

The mark asserted in this case, THE VILLAGES, appears never to have been held famous by any reported decision of a federal court. The only basis for the allegation that appears in the Complaint, moreover, is a series of unsupported and wholly conclusory assertions: Plaintiff alleges that "THE VILLAGES is famous and well known throughout Florida. . . throughout the United States [and] internationally." (Doc. 1 at ¶¶ 124–126.) Plaintiff also alleges that the fame of the

---

[3] Hereinafter referred to as "McCarthy."

mark is in connection with residential retirement home real estate construction (*id.* at ¶ 134) and that the use of the mark for other than residential retirement home real estate construction would dilute its allegedly distinctive qualify. But the mere allegation that the Plaintiff's retirement home mark is famous "is insufficient to state a trademark dilution claim." *Brain Pharma,* at 858 F. Supp. 2d 1357. Pleading fame as a conclusion does nothing to advance the inquiry, for labels and conclusions alone never suffice to make a claim plausible. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Rather, a plaintiff attempting to state such a claim must supply sufficient supporting factual detail that, if accepted as true, makes the claim "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Whether a particular claim meets this plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The court may consider in the context of a dilution claim under the Lanham Act whether the pleader has plausibly set forth facts bearing upon the non-exclusive factors mentioned in 15 U.S.C. § 1125(c)(2)(A)(iv) as factors the court may consider in determining whether a mark possesses the requisite recognition by the "general consuming public of the Unites States." *See, e.g., Dahon North America, Inc., v. Hon,* No.2:11-cv-05835, 2012 WL 1413681 at * 9 (C.D. Cal. April 24, 2012). These factors include "the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties" and the "amount, volume, and geographic extent of sales of goods or services offered under the mark; and the 'extent of actual recognition of the mark." 15 U.S.C. § 1124(c)(2)(A)(i)–(iii).

Here plaintiff provides but trifling detail concerning the fame of the asserted mark: it says that Plaintiff and unnamed affiliates have "spent significant sums to advertise and promote its goods and services" (Doc.1 at ¶ 30), that as a result of the advertising the marks in suit have "come

6

to be recognized as identifying the high-quality and consistent services" (*id.* at ¶ 32), that they use an interactive website (*id.* at ¶¶ 33–34), that consumers recognize "the marks" as being associated with high-quality real estate sales, construction, leasing, property management, brokerage, transportation, media, insurance and related goods and services" (*id.* at ¶ 35) and that Plaintiff has "achieved significant commercial success in connection with its use of the Marks" (*id.* at ¶ 36). These allegations say very little in the way of a non-formulaic statements of fact about the Plaintiff's mark and its degree of fame. They even slip in more recent marks in their fame allegations, as if the more recent marks could in some way bolster the fame of the allegedly famous mark. Plaintiff's allegations are, in the main, merely conclusory statements; they do not suffice to make it probable that the mark THE VILLAGES is indeed "recognized by the *general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added).

To these allegations Plaintiff has added that its mark THE VILLAGES has become incontestable under 15 U.S.C. § 1065. (Doc. 1 at ¶ 42). An incontestable mark is "presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark." *Florida Int'l Univ. Board of Trustees v. Florida National Univ., Inc.,* 830 F.3d 1242, 1256 (11th Cir. 2016). But the mark THE VILLAGES is nevertheless descriptive; even Plaintiff concedes that the mark in its plain meaning denotes or suggests a collection of villages: a "community organized as a group of self-sufficient, interconnected, small towns." (*Id.* at ¶ 45.) Though the mark may qualify as "strong" for likelihood of confusion purposes, that does not make it famous. A mark "can acquire sufficient public recognition and renown to be famous for purposes of a likelihood of confusion analysis without meeting the more stringent requirement for dilution fame." *Coach Servs., Inc. v. Triumph Learning, LLC,* 668 F.3d 1356, 1373 (Fed. Cir. 2012). "To be famous, a mark must be

7

more than just distinctive in a trademark sense." *King of the Mountain Sports, Inc. v. Chrysler Corp.,* 968 F. Supp. 568, 578 (D. Colo. 1997), *aff'd* 185 F.3d 1084 (10th Cir. 1999). Rather the mark must have entered the realm of "household names" in order to qualify as a truly famous mark under Section 1125(c)(2)(A). *Urban Group Exercise Consultants, Ltd. v Dick's Sporting Goods, Inc.,* 108 U.S. P.Q. 2d 1636, 1642 (S.D. N.Y. 2013). *See also Thane Intern., Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 910 (9th Cir. 2002) ("[A] mark usually will achieve broad-based fame only if a large portion of the general consuming public recognizes the mark. Put another way . . . the mark must be a household name."). That the mark THE VILLAGES has acquired distinctiveness is therefore insufficient to qualify it as famous in the antidilution sense. As noted in McCarthy, a trademark "cannot be 'famous' unless it is 'distinctive' but it can certainly be 'distinctive' without being 'famous.'" McCarthy, § 24:104 at 3. Hence in order to establish that a mark has become famous, the owner of the mark must show that the "common or proper noun uses of the term and third-party uses of the mark are now eclipsed by the owner's use of the mark." *Coach Serv.,* 668 F.3d at 1373.

      What other facts has Plaintiff supplied, then, to support the inference that the mark THE VILLAGES is so widely known and so famous among a broad spectrum of the general consuming public that it is more likely than not a household name? The answer to this question is that it has supplied nothing, save the assertion of fame itself. Because this is so, Plaintiff has not stated a plausible claim that its mark THE VILLAGES meets the rigorous test for fame under the Lanham Act. It may be that the Court itself is aware of the mark from its common experience, but the degree of fame required is fame universally recognized by the general public, not recognition amount persons residing in the only in the region of the State in which the court sits. *See, e.g., Heller Inc. v. Design Within Reach, Inc.* 2009 WL 2486054 at *3 (S.D. N.Y. Aug 14, 2009);

8

*Kuklachev v. Gelfman,* 600 F. Supp. 2d 437, 472 (E.D. N.Y. 2009) (dismissing dilution claims for lack of plausible evidence of universal recognition by general consuming public). The distinction is an important one not only for the parties before this Court but for the law as a whole: fame should be difficult to plead and prove because an antidilution statute that is not rigorously applied could become a "rogue law that turns every trademark, no matter how weak, into an anti-competitive weapon." McCarthy, § 24:104 at 1. This case is an apt illustration of the danger: a developer with a mark unwisely labeled as famous is a developer who can use its mark as an anticompetitive tool for suppressing competition from an entire spectrum of small businesses and medical practices offering non-similar goods and service to the community of customers who happen to live in or receive their mail at a place called "the Villages." Dilution as a claim against such would-be vendors of the retirement home seniors living in "the Villages" would be proper only if the mark THE VILLAGES were truly so famous that non-similar, geographically focused uses of the term could whittle away at the distinctive quality of the mark because it is so famous and so widespread in its symbolic value that such non-similar uses would imperil the value of the mark. A developer asserting such fame should be able to plead a plausible basis for such a rare and unlikely situation, particularly in light of the enormous potential injury to third parties or to competition itself that could result from permitting enforcement of a non-famous mark under the guise of a dilution injunction. *See also Mattel, Inc. v. MCA Records,* 296 F.3d 894, 905 (9th Cir. 2002) (warning that a dilution injunction will "generally sweep across broad vistas of the economy").

Count III also fails for an additional reason: it fails to allege a plausible claim for dilution by either blurring or tarnishing. "Blurring involves a diminution in the uniqueness or individuality of a mark because of it use on unrelated goods." *Brain Pharma,* 858 F. Supp. 2d at 1358.

9

Tarnishing on the other hand occurs when a mark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context. *Id.* Here, Plaintiff inconsistently asserts that Defendants are competitors of Plaintiff in "Plaintiff's relocation services." (Doc. 1 at ¶ 74.) Yet it also alleges that Defendants are offering "services other than construction of residential homes for retirees" under marks that are alleged to be so similar to THE VILLAGES that dilution is likely. (*Id*. at ¶ 127.) One of these statements cannot be true. If the parties are in direct competition for the same goods and services, then there is no basis for claiming dilution, for the essence of dilution is that the distinctive qualify of the famous mark is being undermined by the junior user's use of the mark for "wholly unrelated goods and services." *Mattel,* 296 F.3d at 905. It makes no sense to sue Defendants for dilution if they are also competing with Plaintiff in the *same* goods and services. A complaint making such inconsistent allegations in inherently implausible.

**B.     Count V Also Fails to Allege a Plausible Claim for Dilution.**

Count V seeks relief for the alleged dilution of THE VILLAGES under Section 495.151, Florida Statutes, which "provides a cause of action for owners of marks that are famous in [Florida] against defendants whose use of the mark or trade name . . . is likely to cause dilution of the distinctive qualify of the famous mark." *Florida Int'l*, 830 F.3d at 1266. A violation of the statute occurs "where a designation resembles the highly distinctive mark of another in a manner likely to cause a reduction in the distinctiveness of the other's mark or 'tarnishes' the images associated with the other's mark." *Id*. The standard for establishing a trademark dilution claim under Section 495.151 is essentially the same as that of a federal dilution claim under the Lanham Act. *Scalini*, 858 F. Supp. 2d at 1358; *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009).

To establish a dilution claim under the statute, "a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in

10

commerce." *Health & Sun Research, Inc. v. Sunless, Inc*., 2014 WL 12609861 at *3 (M.D. Fla. Oct. 14, 2014) (quoting *Brain Pharma*, 858 F. Supp. 2d at 1356–57).

A mark is famous under Section 495.151(1) if it is "famous in this state." In considering whether the asserted mark is famous under this statue the Court may consider, among other factors, the following: the degree of inherent or acquired distinctiveness of the mark in Florida; the duration and extent of use of the mark in Florida; the geographical extent of the trading area in which the mark is used; the duration and extent of advertising and publicity of the mark in Florida; the degree of recognition of the mark in the trading areas and channels of trade in Florida used by the mark's owner and the person against whom the injunction is sought and the nature and extent of use of the same or similar mark by third parties; and whether the mark is registered under Florida or federal law. § 495.151, Fla. Stat.

We have already seen that the mark THE VILLAGES does not qualify as famous under the standards of the Lanham Act; and Count V of the Complaint adds no appreciable detail to the allegations of Count III. Plaintiff asserts only that THE VILLAGES has been "used, advertised, and promoted extensively by Plaintiff for years and consequently the Marks are famous marks known throughout Florida in connection with a range of goods and services." (Doc. 1 at ¶ 144.) Almost none of the detail specified in Section 495.151(1) has been alleged with sufficient clarity to make an informed decision that the mark is indeed likely famous in Florida. Nothing has been said of the mark itself other than it has acquired distinctiveness through secondary meaning. The geographical extent of the mark is unspecified other than by conclusions, yet it is obvious by Plaintiff's own allegations that the mark has particular relevance to a piece of geography located in three counties in Florida. The trading area in question is also largely confined to same geography. And nothing has been provided about the extent of third party uses of the "the

Villages," though it is a fair inference from the Complaint in this case and in other cases pending in this district that third party use of geographically focused marks using some variation on "the Villages" is widespread. If the standard for fame under Section 495.151(1) is essentially the same as that of the Lanham Act, as suggested by *Florida Int'l,* the Court should dismiss Count V also. The Complaint does not provide a plausible set of facts to support the notion that THE VILLAGES, a descriptive if nonetheless strong mark has become so famous in the mind of consumers that it has become, at least in Florida, a household name, such that "common or proper noun uses of the term and third-party uses of the mark are now eclipsed by the owner's use of the mark." *Coach Serv.,* 668 F.3d at 1373. If the Plaintiff is going to proceed on such a theory, it must allege non-conclusory facts showing that such is the case. This it has failed to do. And because it has failed to do so, it is unnecessary to determine if it has also alleged with sufficient plausibility that the Defendants have diluted the purportedly distinctive qualify of the mark by either "blurring" or "tarnishing."

**C.     The Complaint Supplies Only Speculation About Little John's Role in Infringement.**

Little John's is named as a Defendant in all of Plaintiff's claims. In Count I, for trademark infringement, it is named only generically in the category of "Defendants." Likewise in Count II, for federal unfair competition, it is indiscriminately referred to as "Defendants." The same is true for both dilution claims, the claim for common law trademark infringement and even the claim for violation of the Anticybersquatting Consumer Protection Act, although the person who owns the geographically focused www.thevillagesmovingandstorage.com domain name is admitted to be Defendant Sullivan. (Doc. 1 at ¶ 58.)

Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) require a that a complaint sufficiently "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dokumaci v. MAF Collection Servs.*, 2010 WL 1507014, at *1 (M.D. Fla. Apr. 14, 2010) (citing *Twombly*,

12

550 U.S. at 555). A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which facts must establish "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

When a complaint offers only "labels and conclusions" or "naked assertions devoid of further factual enhancement" it fails to satisfy these pleading requirements and must be dismissed. *Id*. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and when assessing a motion to dismiss the court should identify allegations that "are no more than conclusions, are [thus] not entitled to the assumption of truth. *Id*. at 678, 679. The Court has further declared:

> [W]e are not bound to accept as true a legal conclusion couched as a factual allegation [and] where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief.

*Id.* at 678 (quoting *Twombly,* 550 U.S. at 555); *accord Dokumaci*, 2010 WL 1507014 (dismissing complaint that "pleads no facts . . . and merely asserts legal conclusions"). The claimant must plead facts to support its conclusions "because the Court cannot assume a plaintiff can prove facts not alleged." *Dokumaci*, 2010 WL 1507014.

In the instant matter, Plaintiff asserts no factual basis to support its conclusory allegations against Defendant Little John's, and grounds its assertions against Little John's on unsubstantiated theories of derivative or vicarious liability. Indeed, rather than alleging any specific conduct on the part of Little John's, conduct which would impute any causation or liability to Little John's, Plaintiff tenders blanket allegations of actions purportedly taken by all Defendants, collectively. The only support for Plaintiff's theories that all Defendants acted "collectively" are the following conclusory allegations:

13

> 22. *Upon information and belief, all Defendants were acting in concert with or in a joint venture with the other, were and are the agents of each other, and, in doing the wrongful acts complained of herein, each was acting within the course and scope of such agency.*
>
> 23. *Upon information and belief, all Defendants, either individually and/or acting by and through their principals, officers, agents, and employees, have committed the acts complained of herein in interstate commerce.*
>
> 24. *Upon information and belief, all Defendants, either individually or acting by and through their principals, officers, agents, and employees, have committed the acts complained of herein in this District for their individual gain and profit, and are subject to the general and specific jurisdiction and venue of this Court.*

(Doc. 1 at ¶¶ 22–24.)  These conclusory allegations, with nothing more, cannot support any claims against Defendant Little John's.  Plaintiff fails to offer a single fact to support any of these conclusory allegations, and, notably, Paragraphs 22–24—which are the basis for its assertion that all conduct was purportedly committed by the Defendants' collectively and thus the basis for any liability as to Little John's—are asserted only as a matter of speculation "[u]pon information and belief."  Indeed, the only factual relationship between Little John's and the other Defendants alleged by Plaintiff is that Little John's is purportedly owned and operated by Defendant Sullivan.  (*Id.* at ¶¶ 10, 16.)  There is no basis presented to establish that Little John's operates under any trade name or website containing "Villages" or "The Villages."  Nor is there any basis presented to establish that Little John's derives any benefit from Defendant Villages Moving Storage' legal name, Defendant Sullivan's "The Villages Moving and Storage" fictitious name, or <thevillagesmovingandstorage.com> website—let alone any benefit sufficient to bring these trademark actions against Little John's.

Plaintiff has failed to meet its burden of pleading facts to support its conclusory allegations against Little John's, since unfounded speculation, alone, is not sufficient to impute a factual predicate.  Moreover, it is axiomatic that Plaintiff cannot just insinuate a party into a lawsuit under

14

agency theories of liability via relationships materially attenuated from the facts underlying the claims. *See In re Fundamental Long Term Care, Inc.,* 512 B.R. 690, 695 (Bankr. M.D. Fla. 2014)*, aff'd sub nom. Estate of Jackson v. Schron,* 8:16-CV-22-T-17, 2016 WL 4718145 (M.D. Fla. Sept. 8, 2016) (dismissing claims against defendant based upon theories of agency and vicarious liability when complaint (1) failed to allege any specific acts by defendant and (2) failed to allege any facts establishing that defendant's agents in prior transactions were acting as defendant's agents in the specific transactions at issue). The Court should dismiss the claims against Little John's because Plaintiff failed to allege any specific acts by Little John's or any facts establishing the existence of an agency relationship between Little John's and the other Defendants as to the intellectual property matters raised in the Complaint. *Merely claiming on information and belief that Defendant Little John's is somehow liable because it shares a telephone number with the other Defendants and is owned by Defendant Sullivan is not sufficient to state a claim as to Little John's.* These facts alone do make out a plausible claim for imposing liability on Little John's for the alleged ills of its owner. The agent is not per se liable for the wrongs of the principal. *See id.*

"When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8." *Joseph v. Bernstein,* No. 13-4355-CIV, 2014 WL 4101392 at * 3 (S.D. Fla. Aug 19, 2014). It is well known that a complaint may not lump all of the defendants together in each claim without making any effort to distinguish meaningfully among the Defendants as to their individual complicity in an alleged wrong. *E.g., Lane v Capital Acquisitions & Mgmt. Co.,* No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. April 14, 2006). For these reasons alone the Complaint must be dismissed as to Little John's, a company whose actual role in any alleged infringement or cybersquatting is left to the reader's imagination. That Plaintiff has also asserted that "Villages Moving and Little John's are, in operation, the same business" does not change the analysis. This

15

assertion is vague and ambiguous. If Plaintiff is proceeding on an alter ego theory, it must say so. If it is not, what does it mean to say that Little John's is operationally "the same" business? No one knows. Plaintiff has failed to supply Little John's with notice of the claim and grounds on which the complaint rests as to it individually. *See, e.g., George & Co., LLC v. Alibaba.com Inc.,* No. 2:10-cv-719-Ftm-29DNF, 2011 WL 6181940 at *2 (M.D. Fla Dec. 13, 2011).

The Complaint presumably is intended to state a claim for contributory infringement against Little John's but it does not say so and it plainly fails to allege the elements of such a claim. It does not even identify the alleged primary infringer whose conduct forms the basis for imputing fault to Little John's. "To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Coach, Inc. v. Swap Shop, Inc.,* 916 F. Supp. 2d 1271, 1277 (S.D. Fla. 2012) (quoting *Perfect 10, Inc. v. Visa Intern., Service Ass'n.,* 494 F.3d 788, 807 (9th Cir. 2007)).

Here, inducement has not been alleged or any other form of conduct by Little John's by which it induced or materially aided in the distribution or sale of services under an infringing trade name. Because it has failed to supply such allegations, Plaintiff has failed to allege a viable claim premised on inducement. *See, e.g., Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.,* 797 F.3d 1248, 1274 (11th Cir. 2015) (a supplier can be liable for contributory infringement but only if it intentionally induces another to infringe or continues to supply infringing items once it knows or has reason to know that it is engaging in trademark infringement).

## V.   CONCLUSION

For the reasons stated herein, Defendants request the Court to enter an order dismissing Counts III and V of Plaintiff's Complaint, and dismissing all Counts as to Defendant Little John's.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 5, 2017, a copy of the foregoing has been furnished via electronic mail to all counsel of record.

> *s/ Stephen D. Milbrath*
> **Tucker H. Byrd**
> Florida Bar No. 381632
> **Stephen D. Milbrath**
> Florida Bar No. 239194
> **J. Carlos Real**
> Florida Bar No. 012869
> **W. Colby Roof**
> Florida Bar No. 118888
> **BYRD CAMPBELL, P.A.**
> 180 Park Avenue North, Suite 2A
> Winter Park, Florida 32789
> Telephone: (407) 392-2285
> Facsimile: (407) 392-2286
> Primary Email: TByrd@ByrdCampbell.com
> Primary Email: SMilbrath@ByrdCampbell.com
> Primary Email: CReal@ByrdCampbell.com
> Primary Email: CRoof@ByrdCampbell.com
> Secondary Email: AChastain@ByrdCampbell.com
> Secondary Email: DPortera@ByrdCampbell.com
> *Attorneys for Defendants*