**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

HOLDING COMPANY OF THE
VILLAGES, INC.,

     Plaintiff,

vs.                                         Case No. 5:17-cv-187-Oc-34PRL

LITTLE JOHN'S MOVERS & STORAGE,
INC., a Florida corporation, et al.,

     Defendants.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 14; Motion), filed on July 5, 2017. Plaintiff Holding Company of the Villages, Inc. (Plaintiff or Holding Company) filed a response on July 18, 2017. See Plaintiff Holding Company of the Villages, Inc.'s Response in Opposition to Defendants' Motion to Dismiss (Doc. 15; Response). Accordingly, this matter is ripe for review.

**I.    Background**[1]

Holding Company has used the marks THE VILLAGES and *The Villages*, (collectively, the Marks), "since at least as early as July 1992" "for residential real estate construction and development, real estate brokerage of residential housing, and resale of residential housing." See Complaint (Doc. 1) ¶28. Holding Company's predecessor

---

[1] In considering the Motion, the Court must accept all factual allegations in the Complaint (Doc. 1) as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

"coined" the term "The Villages" when it developed The Villages community in central Florida. Id. ¶¶ 7, 43. The term "is suggestive of a community organized as a group of self-sufficient, interconnected, small towns." Id. ¶45. Holding Company has registered, and now owns the rights to, the Marks, as well as twenty related marks. Id. ¶27, 38-39. Pursuant to 15 U.S.C. §1065, "THE VILLAGES," has achieved incontestable status. Id. ¶42.[2]

Holding Company "has spent significant sums to advertise and promote its goods and services using the Marks" in various forums, including television, newspapers, magazines, outdoor advertising, and since 1996, a website located at <thevillages.com> (the Villages Website). Id. ¶¶30-31, 33, 68. These advertisements have reached "prospective customers outside of Florida, who wish to relocate to Florida." Id. ¶31. Holding Company's efforts have enabled it to achieve "significant commercial success." Id. ¶36. The Marks are now "widely recognized by consumers" as identifiers of Holding Company's goods and services. Id.¶35. Accordingly, Holding Company alleges that the Marks are "famous," id. ¶37, 48, "inherently distinctive," id. ¶46, and to the extent the Marks are descriptive, they "have acquired distinctiveness and have achieved secondary meaning in consumers' minds as to the source of goods and services offered by Plaintiff," id. ¶47.

Without Holding Company's consent, Defendants have used the Marks "in an effort to associate [their] business with The Villages community and the Marks." Id. ¶¶56, 75.

---

[2] Under 15 U.S.C. § 1065, "a trademark registration may become incontestable if and when the mark has been in continuous use for 5 years after the initial registration, there is no pending challenge to the validity of the mark, and the registrant files an affidavit with the Commissioner of Patents within one year after the expiration of the initial five-year period, affirming that the mark is still in use." Wilhelm Pudenz, GmbH v. Littlefuse, Inc., 177 F.3d 1204, 1206 n.1 (11th Cir. 1999).

Defendant John D. Sullivan (Sullivan) owns and operates Defendants Little John's Movers & Storage, Inc. (Little John's) and The Villages Moving Storage and Logistics Corp (The Villages Moving) (collectively, the Corporate Defendants). Id. ¶¶10, 16, 20. The Corporate Defendants "are, in operation, the same business." Id. ¶14. They compete with Holding Company's relocation services by offering "residential moving services, commercial moving services, furniture moving services, 'senior moving' services, interstate moving services, vehicle transportation services, packing services, storage and self-storage services, and related goods such as packing and packaging supplies." Id. ¶¶51, 74. Defendants "intentionally target persons moving to Plaintiff's community." Id. ¶64. The Corporate Defendants share a phone number, id. ¶53, and "[u]pon information and belief," promote their services on the website located at <thevillagesmovingandstorage.com>, id. ¶57. Defendant Sullivan owns the domain name for <thevillagesmovingandstorage.com>. Id. ¶70. "Upon information and belief, Little John's does not maintain a separate website or domain name." Id. ¶71. The Corporate Defendants have also used the website located at <villagesmovingandstorage.com>. Id. ¶59.

Further, "[u]pon information and belief, all Defendants were acting in concert with or in a joint venture with the other, were and are the agents of each other, and, in doing the wrongful acts complained of herein, each was acting within the course and scope of such agency." Id. ¶22. All Defendants "committed the acts complained of . . . in interstate commerce . . . for their individual gain and profit." Id. ¶¶23-24. By "wrongfully trad[ing] upon and cash[ing] in on Plaintiff's reputation and exclusive rights in [the] Marks," Defendants have caused Holding Company to suffer irreparable injury "in the form of lost

3

goodwill, diminished reputation, and increased costs." Id. ¶¶92, 95. Additionally, Defendants' conduct has "diluted and/or tarnished" the distinctive quality of the Marks. Id. ¶93.

Based on these allegations, on April 27, 2017, Holding Company filed the Complaint in which it alleges the following four causes of action under federal law: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1) (Count I); (2) unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. § 1114(1) (Count II); (3) trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c) (Count III); and (4) violation of the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d) (Count VI). Id. ¶¶102-136, 151-162. Plaintiff also alleges two claims under Florida law: (1) common law trademark infringement (Count IV), and (2) statutory injury to business reputation and trademark dilution pursuant to Florida Statute section 495.151 (Count V). Id. ¶¶137-150. In response, Defendants filed the instant Motion.

## II. Standard of Review

In ruling on a motion to dismiss, brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680-81. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Discussion

In the Motion, Defendants seek to dismiss Holding Company's claims for dilution under federal and Florida law, Counts III and V, respectively, and to dismiss Little John's as a defendant. See generally Motion. First, the Court will determine whether Holding Company has sufficiently stated its claims for dilution. Then, the Court will consider

whether Holding Company has stated any claim for relief plausible on its face against Little John's.

## A. Dilution Claims

Defendants contend that Holding Company's claims are due to be dismissed pursuant to Rule 12(b)(6) because it has not pled all of the elements required to state a claim. See Motion at 4-12. Specifically, Defendants argue that Holding Company has failed to allege facts showing that the Marks are famous, and that Defendants have diluted the Marks by blurring or by tarnishment. Id. at 9-11. In the Response, Holding Company asserts that it has stated its dilution claims with sufficient particularity to survive a motion to dismiss and that greater factual specificity is not necessary at this stage of the proceedings. See Response at 3-9.

"Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product." Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 489 (5th Cir. 2004). Section 1125(c) of the Lanham Act prohibits trademark dilution by providing that:

> the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

"To establish a dilution claim, a plaintiff 'must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial in commerce.'" Brain Pharma, LLC v. Scalini, 858 F. Supp. 2d 1349, 1356 (S.D. Fla. 2012) (internal citation

omitted); see also Rain Bird Corp. v. Taylor, 665 F. Supp. 2d 1258, 1266-67 (N.D. Fla. 2009) (noting that after the anti-dilution statute was amended in 2006, a plaintiff only has to prove a likelihood of dilution instead of actual dilution). Florida law similarly prohibits trademark dilution, see Fla. Stat. § 495.151, and the standard for establishing a dilution claim under the Florida Statute "is essentially the same as that of a dilution claim under the Lanham Act," Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ. Bd. of Trustees, 91 F. Supp. 3d 1265, 1286 (S.D. Fla. Mar. 4, 2015), aff'd, 830 F.3d 1242 (11th Cir. 2016).[3] Here, Defendants contend that Holding Company has failed to plead facts sufficient to allege that the Marks are famous and that Defendants have diluted the Marks. See Motion at 4-12.

A mark is considered famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c). Although under federal law, a plaintiff must allege that the mark is famous among "the general consuming public" nationally, id., under the Florida Anti-Dilution Act, a plaintiff must allege only that the mark is famous in Florida, see Fla. Int'l Univ. Bd. of Trustees, 830 F.3d at 1259; Health & Sun Research, Inc. v. Sunless, Inc., No. 8:14-cv-466-T-35MAP, 2014 WL 12609861, at *3 (M.D. Fla. Oct. 14, 2014). To determine whether a mark is famous, courts consider factors such as: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) "[w]hether the mark was registered under the Act of March 3, 1881, or the

---

[3] "Effective January 1, 2007, the Florida Legislature amended Fla. Stat. § 495.151 to track 15 U.S.C. § 1125(c), the Federal Trademark Dilution Act." Fla. Int'l Univ. Bd. of Trustees, 91 F. Supp. 3d at 1286 n.11 (citation omitted).

Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c). One court has observed that, applying this criteria, "courts have generally limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." Heller v. Design Within Reach, Inc., No. 09 Civ.1909(JGK), 2009 WL 2486054, at *3 (S.D.N.Y. Aug. 14, 2009). That court further explained, "[t]he policy rationale behind the fame requirement is to encourage and promote competition; without limiting protection to famous marks, anti-dilution laws would turn every trademark into an 'anti-competitive weapon.'" Id. at *4 (citation omitted). As such, the "threshold for a showing of fame . . . is exceptionally high." It's a 10, Inc. v. Beauty Elite Grp., No. 13-60154-CIV, 2013 WL 6834804, at *8 (S.D. Fla. Dec. 23, 2013).

A mark is famous if it is "'truly prominent and renowned.'" Bentley Motors, Ltd. Corp. v. McEntegart, 976 F. Supp. 2d 1297, 1313 (M.D. Fla. 2013) (citation omitted). A claimant "must show that, when the general public encounters the mark 'in almost any context, it associates the term, at least initially, with the mark's owner.'" Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (citation omitted). "[E]ven if a mark is distinctive in its particular market, it does not render it inherently distinctive so as to engender immediate recognition in the general public of a particular product." Michael Caruso & Co. v. Estefan Enters., Inc., 994 F. Supp. 1454, 1463 (S.D. Fla. 1998), aff'd, 166 F.3d 353 (11th Cir. 1998); see also Coach Servs., 668 F.3d at 1372 ("By using the 'general consuming public' as the benchmark, [15 U.S.C. § 1125(c)] eliminated the possibility of 'niche fame,' which some courts had recognized under the previous version of the statute."). "In other words, [a] party claiming dilution must establish that its mark is

practically a household name, of the likes of such giants of branding as Exxon, Kodak, and Coca-Cola." It's a 10, 2013 WL 6834804 at *8 (citations omitted).

Here, the Court finds that Holding Company has failed to plead facts sufficient to state a plausible claim that the Marks are famous among the general consuming public in the United States. Although Holding Company generally alleges that the Marks are famous throughout Florida, the United States, and internationally "as designators for the source of goods and services provided by Plaintiff and its affiliates," and that the Marks "are widely recognized by consumers," see Complaint ¶¶35, 37, 124-26, these are conclusory allegations which are insufficient to support a dilution claim. Indeed, "whether a mark is 'famous' is a legal conclusion and therefore, on a motion to dismiss, the court does not simply accept Plaintiff's recitation of that element [of] its dilution case. Rather, under Twombly and Iqbal, Plaintiff must allege facts which makes such a conclusion plausible." Brookwood Funding, LLC v. Avant Credit Corp., No. 1:14-CV-2960-SCJ, 2015 WL 11504556, at *4 (N.D. Ga. July 28, 2015). In the Complaint, Holding Company has failed to allege facts making its conclusory allegations of fame plausible.

First, Holding Company attempts to support its conclusory allegations of fame by alleging that the Marks are inherently distinctive as designators of Holding Company's goods and services, and to the extent they are descriptive, they have acquired a secondary meaning identifying Holding Company as their source. See Complaint ¶¶46-47. However, these allegations are insufficient because a trademark "can certainly be 'distinctive' without being 'famous,'" even though a "trademark cannot be 'famous' unless it is 'distinctive.'" 4 McCarthy on Trademarks and Unfair Competition §24:104 (5th ed. 2017) (citation omitted). Further, Holding Company attempts to allege fame by pleading

that the THE VILLAGES mark is registered and incontestable pursuant to 15 U.S.C. § 1065.  See Complaint ¶¶41-42.  However, the fact that a "mark is presumed to have a secondary meaning given its 'incontestable' status is not sufficient to render the mark 'famous' for purposes of the dilution analysis."  Carnival Corp. v. SeaEscape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1269-70 (S.D. Fla. 1999).

Additionally, Holding Company asserts that it has spent "significant sums" to promote the Marks and achieved "significant commercial success."[4]  See Complaint ¶¶31, 36.  In this regard, Holding Company pleads that since July 1992, it "has spent significant sums to use the Marks to advertise and promote its goods and services on various platforms, including television, newspapers, magazines, outdoor advertising, and the Villages Website.  Id. ¶¶30-31.  However, threadbare "allegations of extensive overall sales and advertising for a product line are insufficient to unilaterally support an assertion that the trade dress of those products has achieved the widespread renown necessary to establish fame."  Urban Grp. Exercise Consultants, Ltd. V. Dick's Sporting Goods, Inc., No. 12 Civ. 3599, 2013 WL 866867, at *6 (S.D.N.Y. Mar. 8, 2013); see also Brookwood Funding, 2015 WL 11504556 at *4 ("Other than general allegations that it has invested time and money into its mark, Plaintiff has not alleged any facts which would make it plausible that the Brookwood mark is 'famous' for the purposes of a federal dilution claim[ ].").  Notably, unlike the plaintiff in Superior Consulting Servs., Inc. v. Shaklee Corp., No. 6:16-cv-2001-Orl-31GJK, 2017 WL 2834783 (M.D. Fla. June 30, 2017), who alleged "that its marks have been used for more than thirty years within the nutritional supplement

---

[4] The use of the adjective "significant" does little to aid Holding Company's claims.  An amount may well be "significant" to a particular company, but still be wholly inadequate to achieve, or even be suggestive of, fame.

market 'to identify, market, and sell millions of products worldwide,'" Holding Company has failed to plead the extent or geographic scope of its sales or promotion efforts. Holding Company's only allegation relating to the scope of its promotion efforts indicates that Holding Company sought to reach "prospective customers outside of Florida, who wish to relocate to Florida." Id. ¶31. At best, this allegation suggests fame among a niche population instead of the general public, which is insufficient. See 411 Kitchen Cabinets LLC v. King of Kitchen and Granite Inc., No. 16-80206-Civ-Rosenberg/Brannon, 2016 WL 7335840, at *5 (S.D. Fla. Oct. 25, 2016) (alleging fame within a particular industry "does not establish the requisite fame required for a dilution claim."); Michael Caruso, 994 F. Supp. at 1463 (collecting cases). The Court cannot reasonably infer nationwide fame from the bare assertion that Holding Company advertises to this narrow group of consumers. See Thane Int'l, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 912 (9th Cir. 2002) ("Many products receive broad incidental media coverage. Such promotion does not lead to the conclusion that their trademarks have become a part of the collective national consciousness.").

Further, Plaintiff fails to provide any estimate of its actual advertising budget or revenues, or any facts supporting an inference that it has received nation-wide acclaim. Cf. PortionPac Chem. Corp. v. Sanitech Sys., Inc., No. 8:01-CV-1297-T-17MAP, Doc. 79, ¶14 (M.D. Fla. filed Nov. 2, 2001) (alleging that plaintiff spent millions of dollars to develop goodwill in its distinctive marks "to cause customers throughout the United States" to recognize its program as an industry leader," served as a patron member of a national association, and that its program was "the leading value-added, comprehensive cleaning, sanitation and safety system for school districts in the United States."); 210 F. Supp. 2d

1302 (M.D. Fla. 2002) (finding that the plaintiff alleged fame). Instead, Holding Company's allegations of fame amount to threadbare conclusory assertions. See Brain Pharma, LLC v. Scalini, 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (finding that the plaintiff failed to plead that its trademarks were famous, among other deficiencies). Upon review of the Complaint as a whole, the Court concludes that Holding Company's factual allegations fall well short of supporting a plausible claim that the Marks have become household names, in the likes of Exxon, Kodak, and Coca-Cola. See It's a 10, 2013 WL 6834804 at *8.

For the same reasons that Holding Company has failed to allege that the Marks are famous among the general population of the United States, Holding Company has failed to plead facts supporting a conclusion that the Marks are famous among the general population in Florida. In addition to re-asserting the allegations discussed above, Holding Company simply states that the Marks "have been used, advertised, and promoted extensively by Holding Company for years" and then concludes that "consequently the Marks are famous throughout Florida." See Complaint ¶144. In doing so, Holding Company fails to present any facts supporting its conclusion. For example, it does not allege any estimate of its advertising budget or revenues, or the scope of its promotion efforts and sales. Cf. Wyndham Vacation Ownership, Inc. v. Timeshares Direct, Inc., No. 6:13-cv-195-Orl-28DAB, 2013 WL 5289734, Doc. 24 ¶¶13-14 (M.D. Fla. Sept. 19, 2013) (finding that a plaintiff stated a claim for dilution under federal and Florida law by alleging that "WVO is one of the largest vacation exchange providers in the United States" and that the value of its goodwill exceeded millions of dollars.). Moreover, although Holding Company alleges that it developed the Villages community in central Florida and operates in Lake, Sumter, and Marion Counties, Florida, see Complaint ¶¶7, 25, Holding Company

does not allege that it has any ties elsewhere in the state. The well pled factual allegations of the Complaint fail to support an inference that the Marks have become a household name throughout Florida.

Because Holding Company has failed to plead sufficient facts to support a plausible claim that the Marks are famous, the Motion is due to be granted to the extent that Defendants seek to dismiss Counts III and V of the Complaint. Accordingly, the Court need not address Defendants' argument regarding Holding Company's failure to plead that Defendants have diluted the Marks by blurring or tarnishment. See Motion at 9-10.

**B. Claims Against Little John's Movers & Storage, Inc.**

Defendants also move to dismiss Little John's as a defendant in this action because Holding Company has failed to allege a basis for holding Little John's liable. See Motion at 12-16. Specifically, Defendants contend that Holding Company neither alleges that Little John's personally engaged in any wrongful conduct, nor provides a basis for holding Little John's vicariously liable for the other Defendants' conduct. Id. In the Response, Holding Company argues that Little John's is liable for the other Defendants' wrongful acts because all Defendants operate as a single entity and therefore, "the acts of one corporate Defendant appear indistinguishable from the acts of the other." See Response at 9-11.[5]

---

[5] Additionally, in the Motion, Defendants argue that Holding Company fails to state a claim for contributory infringement because it has failed to plead the elements of such a claim. See Motion at 16. Holding Company does not address this argument. See generally Response. Thus, to the extent Holding Company intends to assert a claim for contributory infringement against Little John's, Holding Company concedes that it has failed to do so with sufficient particularity. Accordingly, to the extent that Holding Company attempts to assert a contributory infringement claim against Little John's, such claim is due to be dismissed. See Walker v. Branch Banking & Trust Co., 237 F. Supp. 3d 1326, 1334 n.3 (S.D. Fla. 2017) ("Plaintiffs do not dispute Defendant's argument that the Complaint fails to adequately plead actual damages in the form of emotional distress and related harm. Accordingly, Plaintiffs' claims for these damages are dismissed.").

Rule 8(a)(2) requires a claimant to provide "a short and plain statement" demonstrating that it is entitled to relief. Generally, a complaint is considered an impermissible "shotgun pleading" when multiple claims are asserted against multiple defendants "without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321-22 (11th Cir. 2015); see also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing a shotgun complaint with claims brought against multiple defendants); Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 164-65 (11th Cir. 1997) (same). That is, a complaint fails to satisfy Rule 8 if the plaintiff "'indiscriminately lump[s] all . . . Defendants together,' without articulating the factual basis for each Defendant's liability." Joseph v. Bernstein, 612 F. App'x 551, 555 (11th Cir. 2015) (per curiam); see also Lane v. Cap. Acquisitions & Mgmt. Co., No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (dismissing a complaint where the plaintiff "fail[ed] to differentiate among the defendants, alleging instead violations by a collective 'defendant.'"), aff'd on other grounds, 322 F. App'x 675 (11th Cir. 2009). Notably, Rule 8 does not require a plaintiff to bring separate claims against each defendant as long as each defendant has notice of the specific claims against it. See Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct."); Tracfone Wireless, Inc. v. GSM Grp., 555 F. Supp. 2d 1331, 1336 (S.D. Fla. 2008). Accordingly, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are read in such a way that each defendant is having the allegation made about him individually." Crowe v.

Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). Therefore, the Court must determine whether Holding Company has alleged a factual basis to pursue its claims against Little John's.

Notably, Holding Company does not seek to hold Little John's liable for its own conduct. See generally Response. Instead, Holding Company seeks to hold Little John's liable for the other Defendants' wrongful acts based upon its contention that Defendants are part of a joint venture and "operate as a single entity." Id. at 10. Under Florida law, a joint venture "may be created by express or implied contract, and the contractual relationship must consist of the following elements: (1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control." Williams v. Obstfeld, 314 F.3d 1270, 1275-76 (11th Cir. 2002). "Florida courts have interpreted these requirements to preclude a finding that a partnership or joint venture exists where any factor is missing." Id. at 1276.

To support its joint venture theory of liability, Holding Company alleges that "[u]pon information and belief, all Defendants were acting in concert with or in a joint venture with the other, were and are the agents of each other, and, in doing the wrongful acts complained of herein, each was acting within the course and scope of such agency." See Complaint ¶22. However, this conclusory allegation is insufficient to plead a joint venture because a "party's 'use of a certain descriptive label for one of the contracting parties is not determinative of the actual legal relationship between the parties.'" Garcia v. Gravity Interactive, Inc., No. 10-62162-Civ-COOKE/TURNOFF, 2012 WL 13005342, at *9 (S.D. Fla. Jan. 17, 2012) (citation omitted). Further, the Court need not accept the truth of allegations that are based simply "upon information and belief," see Mann v. Palmer, 713

F.3d 1306, 1315 (11th Cir. 2013), unless the "belief is based on factual information that makes the inference of culpability plausible," see Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc., No. 12-80393-CIV, 2013 WL 1176252, at *3 (S.D. Fla. March 20, 2013) (citing Iqbal, 556 U.S. at 678). To make its conclusory allegation that Defendants engaged in a joint venture plausible, Holding Company pleads that the Corporate Defendants share a phone number, see Complaint ¶53, promote their business on the same website, id. ¶57, and are owned by Defendant Sullivan, id. ¶20. Holding Company contends that "[w]here two companies share the same owner/operator, phone number, and domain names, and one of them fails to offer a distinct online presence, it is easy to infer that consumers seeking to contact 'The Villages Moving Storage and Logistics Corp' . . . would likely be directed to Little John's moving services as well, and that Defendant Sullivan would personally be making the decision as to which entity should receive the opportunity." See Response at 10. Even assuming that this inference were reasonable, Holding Company's allegations would still be insufficient to plead a joint venture. The Complaint is devoid of any allegations suggesting that Defendants have the right to share profits and a duty to share losses. This deficiency alone is sufficient to warrant the dismissal of Little John's as a defendant on a joint venture theory of liability. Indeed, as noted by the Eleventh Circuit Court of Appeals, "Florida courts have interpreted [the joint venture requirements] to preclude a finding that a partnership or joint venture exists where any factor is missing." Williams, 314 F.3d at 1276.

Accordingly, because Holding Company fails to allege that Little John's personally committed any wrongful conduct, and does not plead sufficiently facts to plausibly assert that the other Defendants acted as Little John's agents, Little John's is due to be dismissed

as a defendant in this action.  See In re Fundamental Long Term Care, Inc., 512 B.R. 690, 695-96 (Bankr. M.D. Fla. 2014) (dismissing a defendant who neither committed any act individually, nor bore an agency relationship with the tortfeasors), aff'd sub nom., Estate of Jackson v. Schron, No. 8:16-cv-22-T-17, 2016 WL 4718145 (M.D. Fla. Sept. 8, 2016), aff'd, 873 F.3d 1325 (11th Cir. 2017).  Thus, the Motion is due to be granted.[6]

**ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 14) is **GRANTED**, Counts III and V are **DISMISSED**, and all claims against Defendant Little John's Movers & Storage, Inc. are **DISMISSED**.

2. The Clerk of the Court is directed to terminate Defendant Little John's Movers & Storage, Inc. from the Court docket.

**DONE AND ORDERED** in Chambers this 11th day of December, 2017.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc25
Copies to:
Counsel of Record

---

[6] In determining that these claims are due to be dismissed, the Court notes that on July 20, 2017, the Court advised Holding Company that to the extent it wished to amend the allegations in the Complaint, it must file a properly supported motion requesting leave to do so.  See Order (Doc. 16) at 2.  Holding Company, which is represented by counsel, did not seek leave to amend or otherwise make any attempt to remedy the pleading deficiencies identified in the Motion.  See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").